IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANDY DAY, PERDUE FARMS, INC.,
PERDUE FOODS LLC,                              *

   *Plaintiffs*,                                          *

v.                                                            *       Civil Action No. RDB-25-1012

UNITED STATES OF AMERICA,               *

   *Defendant*.                                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

On March 27, 2025, Perdue Farms, Inc., Perdue Foods LLC, and Randy Day—the former CEO of Perdue Farms, Inc.—initiated the instant litigation, which seeks to quash the subpoena served March 13, 2025, by the Government for the deposition of Day in connection with the ongoing antitrust lawsuit *United States v. Agri Stats*, Case No. 0:23-cv-03009-JRT-JFD (D. Minn.). (ECF No. 1.)[1] On March 31, 2025, the United States filed a Motion to Transfer to the District of Minnesota and for Expedited Briefing (ECF No. 5), which is fully briefed (ECF Nos. 10; 22). On April 17, 2025, the Court held an on-the-record remote motions hearing chiefly focused on the Motion to Transfer to the District of Minnesota (ECF No. 5).

Pursuant to Fed. R. Civ. P. 45(f), this Court, as the compliance court, may transfer a subpoena-related motion to the United States District Court for the District of Minnesota, the issuing court, "if the person subject to the subpoena consents or if the [compliance] court

---

[1] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

finds exceptional circumstances." FED. R. CIV. P. 45(f). Here, Day does not consent to transfer. (ECF No. 10.) Nevertheless, the Court finds that the Government—as proponent of the transfer—has met its burden to show exceptional circumstances justify transfer. At bottom, the District of Minnesota's familiarity with the underlying antitrust action is a compelling factor in a complex case such as *Agri Stats*, especially where the issuing court is already coordinating the nearly-completed discovery and has already ruled on issues similar to those presented by Perdue and Day's motion to quash. Accordingly, and for the reasons stated on the record and further explained below, the United States of America's Motion to Transfer to the District of Minnesota (ECF No. 5) is GRANTED and this case shall be TRANSFERRED to the United States District Court for the District of Minnesota.

## BACKGROUND

Through this litigation initiated March 27, 2025, Perdue Farms, Inc., Perdue Foods LLC, and Randy Day—Perdue Farms, Inc.'s former CEO—seek to quash the subpoena served March 13, 2025,[2] by the Government for Day's deposition in connection with a case pending in the United States District Court for the District of Minnesota—*United States v. Agri Stats*, Case No. 0:23-cv-03009-JRT-JFD. (ECF No. 1.) As background, *Agri Stats* is an antitrust lawsuit brought by the United States and several states against Agri Stats, Inc., which is a data provider for the meat industry. In brief, the lawsuit alleges that Agri Stats facilitated an illegal information exchange between meat processors, which resulted in higher prices for consumers. *Agri Stats*—a public enforcement action—follows several private actions against

---

[2] To be clear, on January 31, 2025, the Government notified counsel for Perdue of their intent to depose Day, (ECF No. 5-2 at 50), but it appears that Day's counsel did not agree to accept service of the subpoena on Day's behalf until mid-March. (*Id.* at 52–65.)

Agri Stats and third-party meat processors.[3] Neither Perdue nor Day is a party to the *Agri Stats* case, and according to Perdue and Day, Day "has already testified [twice] regarding the same issues and the same facts about Perdue's use of Argri Stats" in two Northern District of Illinois cases, *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 and *In re Turkey Antitrust Litigation*, Case No. 19-cv-08318. In brief, it is Perdue and Day's position that a third deposition would impose undue burden on both Day and Perdue. (*See* ECF Nos. 1-2 at 8–13; 3-1 at 8–13 *SEALED*.)

In its opposition (ECF No. 12) to the motion to quash, the Government notes that two similar motions were recently denied in *Agri Stats*, and stresses that the same result should follow here, as the Government would like to cover topics that "were not covered in Mr. Day's prior depositions." (*See* ECF Nos. 12 at 2; 13-1 at 2 *SEALED*.) That is, the Government would like to depose Day regarding (1) his role in creating an "Agri Stats Steering Committee" designed to increase Perdue's focus on using Agri Stats' information in its everyday business; (2) focus on Perdue's use of "customer sales" reports designed "to pin-point your largest pricing opportunities for specific customers and specific products"; and (3) disagreement with Perdue's then-CFO Mark Garth regarding Perdue's use of Agri Stats, culminating in Garth's termination from Perdue. (*See* ECF Nos. 12 at 2; 13-1 at 2 *SEALED*.) The Government further stresses that it has offered to limit the deposition to less than a full day of questioning

---

[3] In its Motion to Transfer, the Government stresses that *Agri Stats* is distinguishable from the private enforcement actions that came before it, as *Agri Stats* "focus[es] exclusively on unlawful information sharing subject to a rule of reason analysis, encompass[es] a longer relevant time period, and seek[s] injunctive relief and no monetary damages," and because the plaintiffs in *Agri Stats*—the United States and several states—did not participate in the private litigation. (ECF No. 5-1 at 3–4.)

3

and have offered the choice of a remote or in-person deposition. (*See* ECF Nos. 12 at 2–3; 13-1 at 2–3 *SEALED*.)

While briefing on the on the Plaintiffs' motion is ongoing,[4] the Government's Motion to Transfer to the District of Minnesota and for Expedited Briefing (ECF No. 5) is fully briefed (ECF Nos. 10; 22); and on April 17, 2025, the Court held an on-the-record remote motions hearing chiefly focused on the Government's Motion to Transfer (ECF No. 5).

## ANALYSIS

In support of its motion, the Government stresses that the District of Minnesota is deeply familiar with *Agri Stats* and has already addressed similar motions to quash that rely on the same arguments Perdue makes in its motion to quash. (ECF No. 5-1 at 5–8; *see also* ECF No. 5-2 at 5–48 (Transcript of March 18, 2025 Motions Hearing).) According to the Government, transferring the motion to Magistrate Judge John Docherty, who is overseeing discovery in *Agri Stats*, would promote judicial economy and avoid any disruption or inconsistency in the ongoing management of discovery and pretrial preparations in *Agri Stats*. (ECF No. 5-1 at 5–8.) Moreover, the Government contends that such benefits to the interests of judicial economy would significantly outweigh any burden that transfer might impose on Day, as the discovery hearings in *Agri Stats* have all been conducted via video conference. (*Id.* at 8.) The Government further stresses that any burden imposed on Perdue is minimal because it is a large, national company represented by a major law firm. (*Id.*)

---

[4] The Government filed their opposition to the motion to quash and related filings (ECF Nos. 12–20) on April 10, 2025. Thus, pursuant to Local Rule 105.2(a), any reply memoranda would be due no later than April 24, 2025.

In opposition (ECF No. 10), Perdue and Day argue against transfer, claiming the Government has not established the "exceptional circumstances" necessary to warrant transferring. First, Perdue and Day argue that the District of Minnesota's familiarity with *Agri Stats* does not create exceptional circumstances to warrant transfer of the motion to quash. (*Id.* at 3–7.) Perdue and Day further argue that the District of Minnesota's knowledge of discovery disputes does not weigh in favor of transfer. (*Id.* at 7–9.) Third, Perdue and Day argue that this Court's ruling on the motion to quash would not disrupt the underlying litigation in *Agri Stats*. (*Id.* at 10–12.) Lastly, Perdue and Day insist that the "presumptive" burden imposed by transfer outweighs the "non-existent" exceptional circumstances. (*Id.* at 12.)

In its reply (ECF No. 22), the Government stresses that Perdue fails to meaningfully distinguish its own motion to quash from the prior motions in *Agri Stats* (*id.* at 2–4) and that Perdue fails to identify any specific burden from transfer (*id.* at 4–5). The Court's analysis follows.

A subpoena must be issued by the court where the underlying action is pending, i.e., the "issuing court," but challenges to the subpoena are to be heard by the district court encompassing the place where compliance with the subpoena is required, i.e., the "compliance court." FED. R. CIV. P. 45(a)(2), (d)(3)(A)). Thus, in this case, the District of Minnesota is the issuing court, and this Court—the District of Maryland—is the compliance court. Pursuant to Fed. R. Civ. P. 45(f), this Court—as the compliance court—may transfer a subpoena-related motion to the issuing court "if the person subject to the subpoena consents or if the [compliance] court finds exceptional circumstances." FED. R. CIV. P. 45(f). Here, Day does

not consent to transfer. While Rule 45(f) does not define what is meant by "exceptional circumstances," the Advisory Committee notes on 2013 amendments to Federal Rule of Civil Procedure 45(f) explain when a transfer may be appropriate:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

While familiarity with the underlying action will not always justify a transfer, it is a compelling factor in "highly complex" cases where the issuing court is aware of "the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). Here, the issuing court is already coordinating discovery in the underlying action, and has already ruled on issues similar to those presented by Perdue and Day's motion to quash. It is further noted that discovery is nearing completion in *Agri Stats*. Moreover, in light of the fact that Judge Docherty has conducted prior discovery hearings remotely, the burden imposed on local nonparties Perdue and Day by transfer to the District of Minnesota is minimal. Despite Perdue and Day's assertions to the contrary, the simple fact is that exceptional circumstances outweigh Perdue and Day's interest in obtaining local resolution of the motion to quash.

Accordingly, the United States of America's Motion to Transfer to the District of Minnesota (ECF No. 5) is GRANTED.

## CONCLUSION

For the reasons stated on the record and above, it is this 17th day of April, 2025, hereby ORDERED that United States of America's Motion to Transfer to the District of Minnesota (ECF No. 5) is GRANTED; and this matter shall be TRANSFERRED to the District of Minnesota.

/s/
Richard D. Bennett
United States Senior District Judge